## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JEFFERY TODD CRYSTAL,**

      **Petitioner,**

**v.**                                                   **Case No. 3:20cv5565-LC/MAF**

**MARK INCH, Secretary,**
**Department of Corrections,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On June 12, 2020, Petitioner Jeffery T. Crystal, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On September 30, 2020, Respondent filed an answer, with exhibits. ECF No. 8. Petitioner filed a reply on November 25, 2020. ECF No. 10.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). The undersigned has determined no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments show Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## <u>Background and Procedural History</u>

By information filed January 15, 2014, in Okaloosa County Circuit Court Case 2013-CF-2963, the State of Florida charged Petitioner Jeffery Todd Crystal with two counts in connection with events that took place on or about June 30, 2011, involving a vehicle from Porsche of Destin:   (1) grand theft, a first degree felony, contrary to section 812.014(1)(a)-(b) and (2)(a), Florida Statutes; and (2) delivery of a worthless check for services, goods, or things of value, a third degree felony, contrary to section 832.05, Florida Statutes.   Ex. A at 13.[1]   In particular, Crystal tendered a check to Porsche of Destin on June 30, 2011, in the amount of $109,588.74, for a 2011 Porsche Panamera, and Crystal took possession of the vehicle.   *See id*. at 57; Ex. B at 193-95.   The sales manager, Robert Graubman, subsequently called the financial institution to verify the available funds, and he learned Crystal's account had insufficient funds to cover the check; he immediately called Crystal, who did not return any of his calls that day or for the next several days.   Ex. B at 187, 197-201.   Crystal returned the car to Porsche

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No.8.

of Destin on Friday, July 8, 2011, having put over 2000 miles on it.   Ex. B at 201-02.

Crystal proceeded to a jury trial on October 6, 2014.   Ex. B (trial transcript).   He did not testify.   Ex. B at 263-66.   On October 7, 2014, the jury found him guilty as charged on both counts.   Ex. A at 70; Ex. B.   On December 8, 2014, the trial court adjudicated him guilty and sentenced him to thirty (30) years in prison on the grand theft count.   Ex. A at 140.   The trial court vacated the worthless check count due to double jeopardy concerns.   Ex. A at 126-28.

Crystal appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D14-5844.   Ex. A at 129. The initial brief raised two points:   (1)   the trial court erred in denying the motion for judgment of acquittal; and (2) the trial court erred in denying Crystal's motion in limine regarding the mileage on the returned vehicle.   Ex. C.   The State filed an answer brief.   Ex. D.   On October 2, 2015, the First DCA affirmed the case, per curiam, without a written opinion.   Ex. E; <u>Crystal v. State</u>, 174 So. 3d 997 (Fla. 1st DCA 2015) (table).   The mandate issued October 20, 2015.   Ex. E.   The First DCA denied Crystal's motion to recall

the mandate.   Ex. F.

On November 3, 2016, Crystal filed in the First DCA a Petition for Writ of Habeas Corpus Alleging Ineffective Assistance of Appellate Counsel, assigned case number 1D16-5053.   Ex. G.   The State filed a response. Ex. H.   Crystal filed a reply.   Ex. I.   On September 25, 2017, the First DCA denied the petition.   Ex. J; Crystal v. State, 234 So. 3d 669 (Fla. 1st DCA 2017).   The First DCA denied Crystal's motions for rehearing and rehearing en banc, Ex. K, and the U.S. Supreme Court declined discretionary jurisdiction, Ex. L.

On December 14, 2016, Crystal filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. M.   The state court struck the motion and provided Crystal an opportunity to file an amended motion correcting the deficiencies.   Ex. N.   Ultimately, Crystal filed a Fourth Amended Motion, which alleged ten claims.   Ex. O at 694-700. The state post-conviction court summarily denied relief by order on October 18, 2018.   Ex. O at 318-34 (exclusive of attachments).

Crystal appealed the denial of post-conviction relief to the First DCA, assigned case number 1D18-5136, and he filed an initial brief.   Ex. P.   The

State filed a notice that it would not file an answer.   Ex. Q.   On July 2, 2019, the First DCA per curiam affirmed the case without a written opinion.   Ex. R; Crystal v. State, 279 So. 3d 69 (Fla. 1st DCA 2019) (table).   The mandate issued September 26, 2019.   Ex. R.

On July 26, 2019, Crystal filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).   Ex. S at 17-27. By order rendered September 26, 2019, the state trial court denied the motion.   *Id*. at 28-30.   Crystal appealed to the First DCA, assigned case number 1D19-3824.   *Id*. at 31; Ex. T.   On May 27, 2020, the First DCA affirmed the case, per curiam, without a written opinion.   Ex. T; Crystal v. State, 295 So. 3d 1157 (Fla. 1st DCA 2020) (table).   The mandate issued June 24, 2020.   Ex. T.

On December 19, 2019, Crystal filed another motion for post-conviction relief in the state trial court.   Ex. U at 18-42.   By order rendered February 10, 2020, the state court denied the motion as an untimely, facially insufficient, and successive Rule 3.850 motion, also noting that "the motion does not present any cognizable claim for postconviction relief."   *Id*. at 47; *see id*. at 43-48.   Crystal appealed to the First DCA, assigned case number

1D20-708, Ex. U at 76, and filed an initial brief, Ex. V.  The State filed a notice that it would not file an answer.  Ex. W.  On August 28, 2020, the First DCA issued a written opinion that included a warning to Crystal not to file frivolous motions.  Ex. X.  The mandate issued September 25, 2020. *See* online docket for 1D20-708 at www.1dca.org.

As indicated above, Crystal filed a § 2254 petition in this Court on June 12, 2020.  ECF No. 1.  In his petition, Crystal raises thirteen (13) grounds, eight (8) of which allege claims of ineffective assistance of counsel (IAC) by appellate or trial counsel:

(1)  **Trial Court Error – Judgment of Acquittal**:  "[T]he trial court erred when it denied Defendant's Motion for Judgment of Acquittal on Grand Theft.  Fundamental Miscarriage of Justice – actual innocence."   ECF No. 1 at 7.

(2)  **Trial Court Error – Motion in Limine**: "[T]he trial court erred when it denied defense counsel's Motion in Limine regarding the mileage on the vehicle when it was returned."   *Id*. at 9.

(3)  **IAC/Appellate Counsel – Judgment of Acquittal**: "Appellate counsel rendered ineffective assistance when he failed to argue on direct appeal the trial court erred by denial of Appellant's Motion for Judgment of Acquittal based on lack of intent.  Based on Giglio violations entered into evidence to prove intent.  Violation of U.S.C.A. 5th, 6th, and 14th Due Process Clause, right to counsel obligatory upon states."   *Id*. at 10.

(4)   **IAC/Appellate Counsel – Prosecutor's Statement**: "Appellate Counsel was ineffective after he failed to raise that assistant State Attorney Bernhardt made improper statement the Crystal Group was a shell corporation in the presence of the jury. In violation of U.S.C.A. 5th, 6th, and 14th Due Process Clause, confrontation clause." *Id*. at 12.

(5)   **IAC/Appellate Counsel – Charging Information**: "Appellate Counsel rendered ineffective assistance upon his failure (to raise on direct appeal, the failure) of the Okaloosa County State Attorney Office, to timely file its charging information within 175 days after Crystal being arrested on November 3, 2011 thus beginning his custody on the Okaloosa County cause. In violation of U.S.C.A. 4th, 5th, 6th, and 14th Amendment U.S. Constitution: Right to a fast and Speedy Trial-Due Process Clause, right to effective assistance of counsel." *Id*. at 14.

(6)   **IAC/Appellate Counsel – Hearsay**: "Appellate Counsel rendered ineffective assistance when he failed to raise on direct appeal that the Trial Court erred by allowing the prosecution to introduce into evidence hearsay testimony from an unnamed Porsche of Destin employee referred to during trial as 'title clerk.' In violation of U.S.C.A. 5th, 6th, and 14th Confrontation Clause and Due Process Clause U.S. Constitution." *Id*. at 15.

(7)   **IAC/Appellate Counsel – Fair Market Value**: "Appellate Counsel rendered ineffective assistance when he failed to raise on direct appeal the failure of the prosecution to establish fair market value-cost of the 2011 Porsche Panamera (s) sold June 30, 2011 with 70 miles roughly (90) days prior to introduction of 2012 models in September 2011. In violation of U.S.C.A. 5th, 6th, and 14th Of the U.S. Constitution." *Id*. at 16.

(8) **Trial Court Error – Evidence Favorable to Defendant:**
"Conviction obtained by the unconstitutional failure of the prosecution to disclose to the Defendant evidence favorable to the Defendant. (Giglio Violation) In violation of U.S.C.A. 5th, 6th, and 14th of the U.S. Constitution due process clause, equal protection under the law Giglio violations. Petitioner has been deprived of his Federal Constitutional rights to due process, equal protection under the law.  The Defendant alerts this Honorable Court to the fact that he is asserting this claim under the United States Constitution."
*Id*. at 17.

(9) **IAC – Phone Records**:  "Defense counsel was ineffective when he failed to file motion to seek court's permission to subpoena phone records that verbally proved agreement between defendant and Porsche of Destin-Robert Graubman.  In violation of the Defendant's 14th and 6th Amendment rights, and alerts this honorable Court that he is asserting his claim under U.S. Constitution.  Effective Assistance of counsel, Due Process, obtaining witnesses in his favor."  *Id*. at 18.

(10) **IAC – Fidelity Investments Evidence**:  "Defense Counsel rendered ineffective assistance upon failing to object to Fidelity Investments evidence chain of custody.  After evidence was altered and admitted into evidence as true and correct to the finder of facts-jury.  In violation of his 6th, and 14th of the U.S. Constitution and alerts this Honorable Court he is asserting this claim under the U.S. Constitution Due Process Clause."  *Id*. at 19.

(11) **IAC – Special Interrogatory Verdict Jury Instructions**:  "Petitioner was denied the constitutional right to effective assistance of trial counsel when counsel failed to consult petitioner and request a Special Interrogatory verdict jury instructions with the Defendant and instead only consulted

the Defendant on lesser included offenses jury instructions. See U.S. Constitution Amendment V, VI, XIV; Strickland v. Washington, 466 U.S. 668 (1984):  The petitioner further alleges he has been deprived of his counsel, due process, equal protection of the laws, the right to an impartial jury, nor be put in jeopardy of the same offense twice.   And alerts the Honorable Court he is asserting this claim under the U.S. Constitution."  *Id*. at 20.

(12) **Trial Court Error – Subject Matter Jurisdiction/ Information**:  "The Okaloosa County criminal court lacked subject matter jurisdiction and personam jurisdiction to impose sentence after the Okaloosa State Attorney's Office failed to timely file information.   In violation of U.S.C.A. 4th, 5th, 6th, and 14th Amendment of the U.S. Constitution.   See lowery v. Estelle, 696 F.2d 333, 336-38 (5th Cir. 1983) and Sunal v. Large, 332 U.S. 174, 178-89 . . . (1947)."  *Id*. at 21.

(13) **Trial Court Error – Subject Matter Jurisdiction/Civil Matter**:  "Okaloosa County Criminal Court lacked Subject Matter Jurisdiction to enter a judgment and impose sentence. Dispute between the Crystal-Group-Jeff Crystal and Porsche of Destin is a civil matter.   In violation of U.S.C.A. 4th, 5th, 6th, and 14th Amendment of the U.S. Constitution "No State shall make or enforce any law which shall abridge privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.   Freedom of Contract is a constitutional right and shall not be interfered with unless the subject matter is illegal.   Contracts with arbitration agreements are governed and enforceable under the federal arbitration act ("FAA").   See Prima Paint Corp. v. Conklin MFG. Co., 388 U.S. 395 . . . (1967).   Fundamental Miscarriage of Justice – actual innocence."  *Id*. at 22.

Respondent filed an answer, with exhibits.   ECF No. 8.   Crystal filed a

reply.   ECF No. 10.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the

doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).   This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Id.

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  Id. at 688.   To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.   For this Court's purposes, importantly, "[t]he question 'is not

whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*   It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1: Trial Court Error – Judgment of Acquittal

In his first ground, Petitioner Crystal asserts the trial court erred in denying his motion for judgment of acquittal (JOA) on the grand theft charge. ECF No. 1 at 7.   He further asserts, "Fundamental Miscarriage of Justice – actual innocence." *Id.*   In its answer, Respondent asserts Crystal did not exhaust this ground because he did not fairly present any federal constitutional argument in the state courts.   ECF No. 8 at 15.

A review of the record reflects that, in arguing the JOA motion in the trial court, defense counsel did not reference federal law and made no mention of any federal claim.   *See* Ex. A at 71-76; Ex. B at 234-45.

Likewise, in the appellate briefs, neither side cited to any federal cases or constitutional provisions.   *See* Ex. C at 3-4, 20, 21-27; Ex. D at iii-iv, 6, 8-15.   Because Crystal thus did not alert the state courts to the federal ground he now asserts, this ground was not fairly presented as a federal claim and is unexhausted.   *See* <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so"); <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 457-58 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."); *see also* <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Picard v. Connor</u>, 404 U.S. 270, 278 (1971).   It is procedurally defaulted because Crystal cannot obtain another direct appeal. *See* <u>O'Sullivan</u>, 526 U.S. at 845.   Crystal has not alleged or shown cause for the default and actual prejudice, although has he broadly asserted actual innocence and a fundamental miscarriage of justice.   *See id*. at 848-49; *see, e.g.*, <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003) (explaining

cause and prejudice, and correction of fundamental miscarriage of justice);

Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has

failed to exhaust state remedies that are no longer available, that failure is a

procedural default which will bar federal habeas relief, unless either the

cause and prejudice or the fundamental miscarriage of just exception is

applicable.").

Even assuming Crystal did exhaust this ground, it does not warrant

habeas relief.    The State presented sufficient evidence, viewed in the light

most favorable to the prosecution, for the jury to conclude Crystal committed

grand theft.    *See* Jackson v. Virginia, 443 U.S. 307, 319 (1979).    "In

determining whether the facts of a particular case satisfy the Jackson

standard, it is necessary to refer to the essential elements of the crimes as

defined by state law."    Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987).

The Eleventh Circuit has explained:

> In reviewing a challenge to the sufficiency of the evidence
> this court must take the evidence in the light most favorable to
> the government. Hamling v. United States, 418 U.S. 87 . . .
> (1974).   Credibility choices and the weighing of evidence must
> be resolved in favor of the jury's verdict.   Glasser v. United
> States, 315 U.S. 60 . . . (1942).   In short, so long as a reasonable
> juror could conclude that the evidence, viewed with all
> reasonable inferences drawn in favor of the government,
> established the defendant's guilt beyond a reasonable doubt,

then the conviction will withstand a sufficiency challenge.  It is not necessary, however, that every hypothesis of innocence be disproven as the jury "is free to choose among reasonable constructions of the evidence."  United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983) (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir., Unit B 1982) (en banc) . . . .

United States v. Funt, 896 F.2d 1288, 1291-92 (1990).   Further, in reviewing

the denial of a JOA motion,

"The question is whether reasonable minds could have found guilt beyond a reasonable doubt, not whether reasonable minds must have found guilt beyond a reasonable doubt."   United States v. Bacon, 598 F.3d 772, 775 (11th Cir. 2010) (quoting United States v. Ellisor, 522 F.3d 1255, 1271 (11th Cir. 2008)) (emphasis in original omitted).   Accordingly,

[i]t is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. . . .   The jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, and the court must accept all reasonable inferences and credibility determinations made by the jury.

United States v. Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006) (internal quotations and citations omitted).  We are "bound by the jury's credibility choices, and by its rejection of the inferences raised by the defendant."   United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005) . . . .

United States v. Broughton, 689 F.3d 1260, 1276-77 (11th Cir. 2012).   In

moving for a judgment of acquittal, the movant admits every conclusion

favorable to the adverse party that a jury might fairly infer from the evidence. *E.g.*, <u>Lynch v. State</u>, 293 So. 2d 44, 45 (Fla. 1974).

Here, the State presented evidence that Crystal misrepresented his business situation and financial circumstances.   Ex. B at 187-203.   He told the sales manager, Robert Graubman, that he had "a business there locally," *id*. at 188, and Crystal "indicated it was in the SanDestin area," *id*. at 190. On the buyer's order, Crystal listed "his company name Crystal Group and Associates," *id*. at 193, with an address at 495 Grand Boulevard, Suite 206, Miramar Beach, *id*. at 194.   Graubman further testified:

> Q.   During this week where the car is gone, you have no money, he won't contact you, did you go to his place of business – or his supposed place of business?
>
> A.   I did.   I want to say it was probably Monday-ish, something like that.   Decided to go on my own.   Drove down to SanDestin looking for his place of business and found out that there was no such business at that address and –
>
> Q.   Had anyone ever heard of him?
>
> A.   Not that I could find, no, sir.

*Id*. at 202-03.

The State presented the testimony of Michelle Tommey, general manager of Regis Group, who testified she "handle[s] all the operations and

sales of the center in Grand Boulevard," more specifically "at the Grand Boulevard in SanDestin."   *Id*. at 150.   Tommey testified that Jeffery Crystal did not have a business at Grand Boulevard in the summer of 2011, she had not heard of the Crystal Group, and she had never spoken to or seen Crystal. *Id*. at 151-52.

The State presented the testimony of Deputy Wilton Mark Justiss, with the Okaloosa County Sherriff's Office.   Ex. B at 157.   Deputy Justiss testified that he researched Crystal's business name and found it "is registered as a fictitious business with the State of Florida."   *Id*. at 168; *see id*. at 171.   (At this point, as set forth in the analysis of Ground 4, *supra*, the trial court explained to the jury that "[a] fictitious name means any name under which – for purposes of this trial – a fictitious name means any name under which a person transacts business in the state other than the person's legal name," that "[a] person may engage in business under a fictitious name if they register that name in an appropriate fashion with the Division of Corporations of the Department of State," and that "[t]he use of the word – the words fictitious name should not connote any elicit or improper purpose.")

Crystal wrote a check for the vehicle and did not have sufficient funds in his account to cover the check.   *Id*. at 193, 195-98.   Crystal did not return

Graubman's calls after Graubman realized Crystal had insufficient funds. *Id*. at 198-201; see id. at 158 (trial testimony of Deputy Justiss regarding Crystal paying by check for vehicle, insufficient funds to cover check, and dealership unable to make contact with Crystal). Deputy Justiss testified that Crystal had two bank accounts, ending in numbers 41 and 50; as of the end of May 2011, neither account had any money, but he thought the accounts may have just been set up that month. *Id*. at 162. At the end of June 2011, when Crystal wrote the check, the net value of the 41 account was $67.42 and the 50 account was $1.02. *Id*. at 163. For July 2011, the ending balance on the 41 account was $0.00, and for the 50 account it was $0.45. *Id*. at 164.

Deputy Justiss also testified that he had reviewed an account belonging to Lucinda Jackson and it "looks like transfers from the account were made to a Mr. Crystal." *Id*. at 165. He testified that one transfer was for $12,000 and it "[s]hows as a returned insufficient funds and another issuance for $100,000 shows returned as insufficient funds." *Id*. at 166. (Lucinda Jackson lived with Crystal or at least had the same address. *Id*. at 166-67, 194; 287.)

Crystal kept the car for a week, returning it to Porsche of Destin on July

8, 2011.  *Id*. at 201.   Graubman also testified as to the value of the vehicle, *id*. at 192-93, and the number of miles, over 2000, Crystal put on the vehicle during the week he had it, *id*. at 202.   *See id*. at 167 (trial testimony of Deputy Justiss regarding car's mileage).

Based on the foregoing, if considered on the merits, this claim fails. The evidence presented at trial, when viewed under the appropriate tests, was sufficient to establish Crystal committed grand theft.   *See* § 810.014(1), Fla. Stat. (2010) (providing that "[a] person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:  (a) deprive the other person of a right to the property or a benefit from the property.   (b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property"), .014(2)(a) (providing that "[i]f the property stolen is valued at $100,000 or more . . . the offender commits grand theft in the first degree"); Ex. B at 320-21 (jury instructions explaining that, to prove grand theft, the State must prove, beyond a reasonable doubt, that Crystal "knowingly and unlawfully obtained or used the vehicle of Porsche of Destin" and "he did so with the intent to either temporarily or permanently . . . deprive Porsche Destin of the right to the property or benefit from it" and "the

value of the property taken was $100,000 or more"); Thus, the trial court did not err in denying the JOA motion and allowing the grand theft charge to go to the jury.

Petitioner Crystal has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this claim should be denied.

## <u>Ground 2</u>: Trial Court Error – Motion in Limine

In his second ground Petitioner Crystal asserts "the trial court erred when it denied defense counsel's Motion in Limine regarding the mileage on the vehicle when it was returned." ECF No. 1 at 9. As supporting facts, Crystal states that "[t]he jury was never provided the source of the mileage" and "the entire situation could have been avoided had the salesman waiting until the funds availability was verified or petitioner brought a cashier's check made payable to the dealership, as requested by petitioner." *Id*.

Respondent asserts Crystal did not exhaust his state court remedies with regard to this ground because he did not give sufficient notice to the state court that he was raising a federal claim, and the claim is now procedurally defaulted. ECF No. 8 at 22-23. Respondent further argues

that Crystal cannot show the state trial court's denial of his motion in limine,

allowing the mileage into evidence, deprived him of a fundamentally fair trial

under the Due Process Clause of the Fourteenth Amendment.   *Id*. at 25.

As with Ground 1, a review of the record reflects that, in arguing the

motion in limine in the trial court to exclude the mileage on the vehicle,

defense counsel did not reference federal law and made no mention of any

federal claim.   *See* Ex. A at 23-25.   Likewise, in the appellate briefs, neither

side cited to any federal cases or constitutional provisions.   *See* Ex. C at 3-

4, 20, 28-32; Ex. D at iii-iv, 6, 16-20.   Because Crystal thus did not alert the

state courts to the federal ground he now asserts, this ground was not fairly

presented as a federal claim and is unexhausted.   *See* Baldwin, 541 U.S. at

32; Preston, 785 F.3d at 457-58; *see also* O'Sullivan, 526 U.S. at 845;

Duncan, 513 U.S. at 365-66; Picard, 404 U.S. at 278.   It is procedurally

defaulted because Crystal cannot obtain another direct appeal.   *See*

O'Sullivan, 526 U.S. at 845.   Crystal has not alleged or shown cause for the

default and actual prejudice, although has he broadly asserted actual

innocence and a fundamental miscarriage of justice.   *See id*. at 848-49; *see,*

*e.g.*, Henderson, 353 F.3d at 892; Smith, 256 F.3d at 1138.

Even assuming Crystal did exhaust this ground, it does not warrant

habeas relief.    Crystal essentially raises a claim of state law error, specifically a state trial court evidentiary ruling.    "[F]ederal habeas corpus relief does not lie for errors of state law."    <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); *see* <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief).    "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."    <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir. 1992).    "Indeed, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence."    <u>Shaw v. Boney</u>, 695 F.2d 528, 530 (11th Cir. 1983).    "A state evidentiary violation in and of itself does not support habeas corpus relief" and "[b]efore such relief may be granted, the violation must rise to the level of a denial of 'fundamental fairness.'"    *Id*.; *see* <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We review state court evidentiary rulings on a petition for habeas corpus to determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' . . . Erroneously admitted evidence deprives a defendant of

fundamental fairness only if it was a 'crucial, critical, highly significant factor' in the [defendant's] conviction." (citations omitted)).

Petitioner Crystal has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   See 28 U.S.C. § 2254(d)(1)-(2).   Evidence that Crystal put over 2000 miles on the car, during the week he had it, was relevant to the issue of intent.   *See, e.g.*, Ex. B at 167, 202, 222-23.   Thus, if considered on the merits, this ground should be denied.

### <u>Ground 3</u>:    IAC/Appellate Counsel – Judgment of Acquittal

In his third ground, Petitioner Crystal argues his appellate counsel provided ineffective assistance by not arguing in the direct appeal that the trial court erred in denying Crystal's motion for judgment of acquittal (JOA) based on lack of intent.   ECF No. 1 at 10.   He also states that "Giglio violations [were] entered into evidence to prove intent."   *Id*.

Respondent indicates that Crystal exhausted this ground by raising it as the fourth issue in his state habeas petition.   ECF No. 8 at 28; *see* Ex. G at 33-40.   The First DCA denied the petition.   Ex. J.

Contrary to Crystal's argument, appellate counsel presented, as the

first point in his direct appeal, an argument that the trial court erred by

denying the JOA motion.   Ex. C at 2, 20, 21-27.   As the "Summary of the

Argument" on this point, the Initial Brief provides:

> The trial court erred when it denied the Appellant's motion
> for judgment of acquittal as to the charge of grand theft.   There
> was evidence presented at trial to support the Appellant's
> reasonable theory of innocence that he intended to pay for the
> vehicle at the time he left the dealership.   The evidence
> presented by the State was insufficient to overcome this theory.
> Consequently, the Appellant's motion for judgment of acquittal
> should have been granted.

Ex. C at 20.   In the argument section, the brief points out that a defendant

must have the specific intent to commit the theft at the time of, or prior to, the

tacking and that this is a necessary element of theft under Florida law.   *Id*.

at 21.   The brief goes on to argue that, where the only proof of guilt is

circumstantial evidence, a conviction cannot stand unless the evidence is

inconsistent with any reasonable hypothesis of innocence, with citations to

State v. Law, 559 So. 2d 187 (Fla. 1989); Deparvine v. State, 995 So. 2d 351

(Fla. 2008); Rocker v. State, 122 So. 3d 898 (Fla. 2d DCA 2013); and State

v. Sims, 110 So. 3d 113 (Fla. 1st DCA 2013).   Ex. C at 21-22.   The brief

points to "several facts presented at trial" that supported Crystal's theory of

innocence:   Crystal visited the dealership "five or six times" during the

previous "six or seven months," thus showing his "intent to purchase a Porsche, evidenced by the amount of time and effort he put into visiting the dealership and consulting with Mr. Graubman"; Cyrstal contacted the dealership during the week he had possession of the car to ask about how the car would be titled; Crystal attempted to deposit $112,000 into his account to cover the cost of the car; when Crystal returned the car, he indicated he was still interested in it.   *Id*. at 23-24.   The brief also points out that Crystal returned the car "when it became clear to him that he could not immediately pay for the vehicle as he had intended" and he had taken "another overt act to honor the contract, as well, by obtaining insurance coverage for the vehicle."   *Id*. at 26.   The brief asserts these facts supported Crystal's reasonable theory of innocence and, thus, "the trial court's denial of defense counsel's motion for judgment of acquittal was error."   *Id*. at 27.

Therefore, contrary to Crystal's argument, his appellate counsel did argue on appeal that the trial court erred in denying his JOA motion on the issue of intent.   To the extent Crystal asserts his appellate counsel should have also argued a Giglio violation, this argument should be rejected for the reasons explained in the analysis of Ground 8, *infra*.   Accordingly, appellate

counsel did not provide ineffective assistance as alleged and this ground should be denied.

### <u>Ground 4</u>:   IAC/Appellate Counsel – Prosecutor's Statement

In his fourth ground, Petitioner Crystal asserts his appellate counsel provided ineffective assistance by not arguing in the direct appeal that "assistant State Attorney Bernhardt made improper statement the Crystal Group was a shell corporation in the presence of the jury."   ECF No. 1 at 12. Crystal asserts this was "[i]n violation of U.S.C.A. 5th, 6th, and 14th Due Process Clause, confrontation clause."   *Id*.

Respondent indicates Crystal exhausted this ground by raising it as the ninth issue in his state habeas petition alleging ineffective assistance of appellate counsel.   ECF No. 8 at 32.   The First DCA denied the petition. Ex. J.   This adjudication on the merits is entitled to AEDPA deference even though no reasoning is set forth in the decision.   *See* <u>Richter</u>, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); <u>Wright v. Sec'y, Dep't of Corr.</u>, 278 F.3d 1245, 1254-55 (11th Cir. 2002).

The record reflects that the state trial court instructed the jury about the

term "fictitious name" during the portion of the trial involving testimony about

the "Crystal Investment Group":

> Ladies and gentlemen, I wish to instruct you the witness is testifying about a fictitious name.   A fictitious name means any name under which – for purposes of this trial – a fictitious name means any name under which a person transacts business in the sate other than the person's legal name.   A person may engage in business under a fictitious name if they register that name in an appropriate fashion with the Division of Corporations of the Department of the state.
>
> The use of the word – the words fictitious name should not connote any elicit or improper purpose.

Ex. B at 170.   The trial judge gave this instruction pursuant to defense

counsel's objection and request.   In particular, during the prosecutor's

questioning of Deputy Justiss, the following transpired:

> Q.   Okay.   Now, did you do any other investigation as to the Defendant's business?
>
> A.   The check that was issued for the vehicle, it was drawn upon a Crystal Investment Group.   Researching the business name, I went to the State of Florida's website for businesses.   That name is registered as a fictitious business with the State of Florida by Mr. Crystal.   And that account according to the website, I believe had been open since, like, 2001, maybe –
>
> MR. CLINES [defense counsel]:   Your Honor, I'm going to object, and I'm going to ask to approach to discuss something.

THE COURT:   Granted.

(At the bench:

MR. CLINES:   I'm going to ask that you instruct the jury that a fictitious business organization is a legal corporation or it's a legal entity under the State of Florida, that there's an entire regulatory scheme on how to register fictitious names because to allow witnesses to constantly say it's a fictitious business, it's going to give them the impression that, you know –

THE COURT:   What do you want me to tell them?

MR. CLINES:   I'd ask that you instruct the jury that a fictitious business organization – a fictitious business under Florida law –

THE COURT:   Fictitious name.

MR. CLINES:   Fictitious name under Florida law gives no rise to any sort of an inference to any wrongdoing is occurring, that there is an entire system of registering these fictitious names, that – and I'm sure that Mr. –

THE COURT:   How about we do this –

MR. CLINES:   I was going to say I'm sure that he's going to introduce it.   If not, I will.   But there is a – his fictitious name has been registered continuously since 1999.

THE COURT:   This is a touch screen . . . .   Do you know what the statute – we'll just give them the definition from the statute. Wouldn't that be the best way?

MR. CLINES:   Probably.   I don't know the statute.   I don't understand the point of them anyway.   I mean, I Googled what's the purpose of a fictitious name, and it brought me straight to the little FAQs.   They might be able to give you the statute –

THE COURT:   . . . .   Okay.   So how about we tell them this?

MR. BERNHARDT [prosecutor]:   That's fine.

Ex. B at 168-70.   Defense counsel also agreed, "That's fine.   Yeah, I think

that's fine."   *Id*. at 170.   The court then instructed the jury as quoted above.

*Id*.

The second instance referred to by Petitioner occurred during closing

argument by the prosecutor:

> Now his actions.   You've seen his bank account.   Now,
> let's see his actions.   He has no contact with Mr. Graubman
> during this whole time even though Mr. Graubman is trying to
> contact him.   He does call to get the title.   Calls the Porsche
> dealership, goes to the title (inaudible).   That's just kind of
> strange.   And of course puts all these miles on the car.   Over
> 2,000.   I think it was over 23.   Of course, he finally returned
> after law enforcement was brought up.   Trying to keep this
> portrayal of good faith.   I'll try to speed along.
>
> **But his business.   This is the last thing.   Again, what
> is he portraying?   What is he – we know what he is and what
> he has and where he lives and that kind of thing, but what is
> he portraying?   His business.   Crystal Group and
> Associates (inaudible).   It's a fictitious name.   We know
> that doesn't mean it's a big fraud or anything like that.   It's
> doing business as.   That's what (inaudible) doing business
> as type of deal.   It's him, (inaudible) I can do my business
> out of it.   So what is he portraying?   Crystal Group.   This
> is not a group.**   Crystal Group, what is that portraying?   That
> means that a group is a group and associates.   So it's this group
> and associates corporation.   What does that portray?

MR. CLINES [defense counsel]:   Objection, Your Honor.

THE COURT:   Please approach.

(At the bench:

MR. CLINES:   Your Honor, facts not in evidence about – there's no evidence whether or not there was other individuals associated with this group and associates.   There's been – you know, I mean, he's basically trying to imply that he's got this front that he's using, but there's been no testimony from anybody whether or not he's a sole operator.   I mean, for all we know, he could have three employees, we just don't know.

THE COURT:   Okay.   So you're saying that he's arguing facts which aren't supported by the evidence?

MR. CLINES:   Correct.

THE COURT:   Sustained.   Redirect.

(Bench conference concluded)

MR. BERNHARDT:   Thank you, Your Honor.   And I apologize (inaudible) that's arguing something that isn't necessarily in evidence.   There is no evidence about whether there is a big group or big associates or big corporation.   But my point is, what is he portraying?   He may be portraying – what is he portraying? This big group and associates or doing business as.

. . . .

He specifically told Mr. Graubman, I have this business in Sandestin.   He put on his buyer's form the exact address of whatever Grand Boulevard, which I'll show you in a second.   He was portraying to have this business in Sandestin.   Why?   It's

a nice area.   It's where the nice businesses are, wealthy.
There is an office there.   No satellite office.   No virtual office.
There was nothing.   I'll show you that in just a minute.   And no
money in the account.   That's what we just saw.

So portraying this big group, no office, no money.   And
there you can see he even puts a suite number on there [the
buyer's form] which I kind of like that.   It has the exact address
there.   (inaudible) Grand Boulevard, Suite whatever, Crystal
Group and Associates Corporation in Sandestin.   This is what
he portrays.

Now, there is a good faith defense in here about whether
the defendant was really, truly mistaken.   But I think you can
probably figure out in his first sentence here, "Clearly it appears
that the taking of property was consistent with honest conduct."
The defendant lied about his business.   There's no way around
that.   There's no evidence to contradict that.   We have
documentation showing this.   We have someone coming in and
saying there's no business there.   He flat out lied about having
an office in Sandestin.

Ex. B at 288-91 (bold emphasis added).   The statements Crystal points to

are bolded.   *See* ECF No. 1 at 12.   Although defense counsel objected, the

objection addressed the prosecutor's suggestion about the number of

individuals or associates Crystal Group included, when no evidence

indicated anything about whether it was a group or whether Crystal was a

sole operator.   The court sustained this objection.   Defense counsel's

objection did not address the issue Crystal appears concerned with – the

implication that his business is not legitimate.

Crystal also points to statements the prosecutor made during rebuttal. In the defense closing argument, defense counsel asserted this was "a business dispute" and "a misunderstanding that's masquerading as a criminal case." Ex. B at 294. Defense counsel began to reference trial testimony regarding office space at Grand Boulevard, whether Regis Corporation had office space there, and whether Crystal had ever had any account with Regis. *Id*. Defense counsel stated, "I know Mr. Bernhardt said, you know, there's nothing there. There actually was. That was a Regis location." *Id*. at 294-95. The prosecutor objected and, at the bench, the following transpired:

> MR. BERNHARDT:  I never said (inaudible).
>
> MR. CLINES:  I know.  I know.  What you said was when they went there, there was like nothing there.  There was no virtual office.  There was no office.
>
> MR. BERNHARDT:  For him.
>
> MR. CLINES:  That's fine.  I'll clarify that I said that.
>
> MR. BERNHARDT:  Okay.
>
> MR. CLINES:  Because I don't want them to have the impression that it was like just a vacant store front.
>
> THE COURT:  You just need to redirect that.

*Id*. at 295.   Defense counsel continued his argument:

> Let me clarify something, ladies and gentlemen.   I had been under the impression when Mr. Bernhardt was talking that he was trying to imply – I'm not saying he was, my impression was he was implying this was just a vacant building that had some street numbers on it that Mr. Crystal had said that's my office.
>
> What it actually is, is it is a legitimate Regis office.   Ms. Tommey testified he didn't have a right to use it.   So I don't want there to be any misunderstanding on that one, okay?   So it is a Regis office.   She did testify Mr. Crystal didn't have a contract with them.   But she also testified he never had a contract with them and Deputy Vaughn took the stand and said, Well, she told me that he had a contract with him.   So there's one inconsistency in this.

*Id*. at 295-96.    After defense counsel concluded his argument, the prosecutor presented rebuttal, which includes the statements pointed to by Crystal and which also references an example the prosecutor used during jury selection involving a potential juror, Ms. Cook.   Specifically, during jury selection, the following transpired:

> MR. BERNHARDT:   You [Ms. Cook] and I are going back hundreds of years, okay?   We're both farmers in a time before there was any currency, okay?   There's no money.   And I need a cow.   I go to you and say I have a chicken that just laid a bunch of eggs that are hopefully going to produce chicks and I will give you five of my eggs for your cow, okay?   Can we do this?   Maybe not being fair.   It looks like it's not a fair trade.   But I'll give you my five eggs for your cow.   And a couple of days later you found out the eggs I gave you are hard boiled eggs, okay?

What information would you want to know in that circumstance to determine if I did that to you intentionally?

. . . .

Would anyone want to know if I had done something similar to Farmer Joe recently?

Would it be important to know if I have a chicken?

And this is, kind of, just a silly example, of course, but this is the, kind of, things that deal with intent.

Ex. B at 72-74.   During rebuttal, the prosecutor referenced that chicken scenario from jury selection:

Now, the last thing I'm going to leave you with.   Me and Ms. Cook's discussion about the farm, about the cows, or the cow and the eggs.   When Mr. Graubman found out that his eggs were hard boiled, what is it that we needed to look at?   What are some of the things that were brought up in jury selection?   The relationship with the person.   Somebody said that I think.   What is my relationship with Ms. Cook?   That might go towards determining intent.

Well, the relationship was good but on false misrepresentation – or false representation.   The defendant specifically told Mr. Graubman that he had an office in Sandestin.   Of all the other things, all the other discrepancies, all the other things he tried to explain, there's no excuse for that.   Other than to straightforwardly misrepresent who you are, what you have.   There's no purpose in that other than to deceive somebody.   I don't know who they can get around that.

So he comes in.   So his relationship was under false pretenses.   That's one of the things that we wanted to look for,

the relationship between the people. . . .

So it was between them two.   We wanted to know if there was something – lastly, of course my favorite one was, do I have a chicken?   I told her I got these eggs from my chicken that I'm giving her, (inaudible).   Well, I'm creating of course here, the chicken is Mr. Graubman's (sic) business or his office.   These funds were supposed to come from his business.   He put the business name as the purchaser on the agreement.   So the business, Crystal Group and Associates Corporation was purchasing this $109,000 car.   Really doing business as type deal.   It has no money on the account and no office.

**Now – I'm not even sure if it is in evidence, but (inaudible) he did have business as deal (inaudible).   So there was something there, but it's a shell – no pun intended, of what he portrayed it to be.**   My example of the cow and the eggs, is if I had a baby chick and that's what it was supposed to have come from.   He did not have the chicken that could support the eggs that he portrayed to go to Mr. Graubman.

What I mean by that is the business couldn't withstand the $109,000 check and he knew it.   He didn't even have what it was that he was portraying, the capabilities of finishing this deal.

So if you look at all the things, the relationship, the lies, what he really had, what he really was compared to what he portrayed, the fact that there was no money in May, no money in June, no money in July, no money in August, one who had less than $12,000 obviously came back insufficient funds. (Inaudible).   Everything shows deceit and fraud.

*Id*. at 314-16 (bold emphasis added).   The statements in bold are the ones pointed to by Crystal.   ECF No. 1 at 13.   As Crystal acknowledges, defense counsel did not object.   *Id*.; *see* Ex. B at 314-16.

"An ineffective assistance of appellate counsel claim is governed by the familiar two-part performance-and-prejudice standard set forth in Strickland v. Washington." Clark v. Crosby, 335 F.3d 1303, 1310 (11th Cir. 2003). Appellate counsel is not deficient for failing to raise a meritless claim. *See, e.g.*, Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008); Reutter v. Sec'y, Dep't of Corr., 232 F. App'x 914, 917 (11th Cir. 2007).

Given the lack of objection to the statements during closing and the affirmative indication to the judge that the instruction about "fictitious name" was "fine," appellate counsel cannot be deficient for not raising a point on appeal challenging the statements pointed to by Crystal. Nothing indicates the references constitute error, much less fundamental error.

Petitioner Crystal has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### Ground 5: IAC/Appellate Counsel – Charging Information

In his fifth ground, Petitioner Crystal asserts his appellate counsel provided ineffective assistance by not arguing in the direct appeal "the failure . . . of the Okaloosa County State Attorney's Office, to timely file its charging

information within 175 days after Crystal being arrested on November 3, 2011 thus beginning his custody on the Okaloosa County cause."   ECF No. 1 at 14.   Crystal asserts this is a violation of "U.S.C.A. 4th, 5th, 6th, and 14th Amendment U.S. Constitution:   Right to a fast and Speedy Trial – Due Process Clause, right to effective assistance of counsel."   *Id.*

Respondent asserts Crystal exhausted his state court remedies on this ground by raising it as the first issue in his state habeas petition.   ECF No. 8 at 36.   The First DCA denied the petition without an explanation.   Ex. J. This adjudication on the merits is entitled to AEDPA deference.   *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.

The record reflects that Crystal was arrested in Georgia on November 3, 2011.   At the time of his arrest, he had two holds from Florida, the one from Okaloosa County in this case, in which the warrant had been issued on October 14, 2011, and another from Pinellas County.   Ex. A at 12; Ex. O at 76-77, 85.   He also had pending criminal matters in three Georgia counties. *See* Ex. O at 78-85.   The record reflects that Crystal was in the Gwinnett County Jail from November 3, 2011, until he was released to the Henry County Jail on January 20, 2013.   Ex. O at 78.   He was released from the Henry County Jail on October 30, 2013, and transferred to Fulton County.

Ex. O at 79, 83.   In Fulton County, Crystal waived extradition on December 12, 2013, Ex. O at 84, and returned to Okaloosa County, Florida, on December 13, 2013, Ex. O at 24, 321.

The State filed the information in this case on January 15, 2014, Ex. A at 13, thirty-three (33) days after Crystal returned to Okaloosa County. Florida Rule of Criminal Procedure 3.191 provides that the time for speedy trial, 175 days for a felony, is tolled until a defendant is in the jurisdiction of the criminal court.   Fla. R. Crim. P. 3.191(e) ("A person who is in federal custody or incarcerated in a jail or correctional institution outside the jurisdiction of this state or a subdivision thereof, and who is charged with a crime by indictment or information issued or filed under the laws of this state, is not entitled to the benefit of this rule until that person returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of the person's return is filed with the court and served on the prosecutor.".   "[A] mere 'detainer' or 'hold' does not amount to an arrest." Hill v. State, 132 So. 3d 925, 928 (Fla. 1st DCA 2014).   Thus, contrary to Crystal's claim, the speedy trial period had not run when the State filed the charging information.

Moreover, as Respondent points out, on June 10, 2014, defense

counsel filed a motion to continue the trial, to obtain further discovery.   Ex. A at 17.   "It is axiomatic under Florida law that a trial continuance granted at the request of the accused constitutes a waiver of the right to a speedy trial under rule 3.191."   State v. Gibson, 783 So. 2d 1155, 1158 (Fla. 5th DCA 2001).

In addition, Crystal has not shown a violation of federal speedy trial rights.   *See* Barker v. Wingo, 407 U.S. 514, 530 (1972) (providing factors to be considered in determining denial of speedy trial rights, including "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant").   Among other things, Crystal has not shown that any delay was unreasonable or that he suffered any prejudice.

Appellate counsel cannot be ineffective for failing to raise meritless issues.   *See* Freeman, 536 F.3d at 1233; Reutter, 232 F. App'x at 917. Petitioner Crystal has not shown that the state court's adjudication was contrary to, or an unreasonable application of, federal law as determined by the U.S. Supreme Court or that the state court's adjudication involved an unreasonable determination of the facts.   This ground should be denied.

### Ground 6:   IAC/Appellate Counsel – Hearsay

In his sixth ground, Petitioner Crystal asserts his appellate counsel

provided ineffective assistance by not raising in the direct appeal "that the Trial Court erred by allowing the prosecution to introduce into evidence hearsay testimony from an unnamed Porsche of Destin employee referred to during trial as 'title clerk.'"   ECF No. 1 at 15.   Crystal asserts this violated "U.S.C.A. 5th, 6th, and 14th Confrontation Clause and Due Process Clause U.S. Constitution."   *Id*.

Respondent states Crystal exhausted his state court remedies on this ground by raising this as the third issue in his state habeas petition.   ECF No. 8 at 38.   The First DCA denied the petition without explanation.   Ex. J. This adjudication on the merits is entitled to AEDPA deference.   *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.

The alleged hearsay identified by Crystal occurred during the direct examination by the prosecutor of Graubman, the salesman at the Porsche of Destin dealership:

> Q.   Okay.   At any point [after he left with the car] did he [Crystal] contact the Porsche dealership about anything?
>
> A.   Yes.   I wasn't aware of it, but he had tried to call and talked to the title clerk to find out if the title work had been processed so he could pick that up.
>
> Q.   He wanted to come get the title?

A.   Yes.

Ex. B at 200; *see* ECF No. 1 at 15.   Assuming the testimony about "the title

clerk" constitutes hearsay, appellate counsel could not properly challenge it

on appeal because no objection was made in the trial court.

Indeed, defense counsel may have believed this testimony favored

Crystal's position that he did not intend to commit a theft.   Defense counsel

called Graubman as the only witness during its presentation and elicited the

following testimony regarding the title clerk:

> Q.   Okay.   Can I ask you – yesterday I know the issue had
> come up about did Mr. Crystal come back to the dealership that
> week or something like that.   At some point in your deposition,
> did you say that, you know, yeah, he came back – something
> about the title work that week?
>
> A.   To my knowledge, he had called, and I spoke to the title
> clerk, as well.   And she confirmed that on like Tuesday or
> Wednesday [during the week Crystal had the car] that he had
> called about the title to see if it was done.   You know, I was trying
> to think about that somewhat.   I'm sure that if he had come in
> and I had not resolved the money issue, then the – I probably
> wouldn't have allowed him to leave.   So I'm going to say I did
> not see him until the next Friday.
>
> Q.   Okay.   But you could have talked to him, right?
>
> A.   It's possible.
>
> Q.   Okay.

> A.   I don't remember doing so, but it's possible.   I know she said
> she spoke to him.   I didn't remember speaking to him.

Ex. B at 270.   Thus, defense counsel waived any objection to the testimony about Crystal calling the title clerk during the week he had the car, and then he elicited the same or similar testimony himself during the defense presentation.   Indeed, during closing argument, defense counsel also referenced Crystal's call to the title clerk in support of the defense position:

> It doesn't make any sense why you would care about the title.   Why would you care about the title if all you plan on doing is returning that car in a couple of days.   You wouldn't care about the title.   The title – it wouldn't even matter.   I mean, temporary tags are good for what?   Thirty days?   What do you really care about the account if all you want to do is joy ride in a Porsche?   There's no proof of intent in this case.

*Id*. at 305.

As with Ground 5, appellate counsel cannot be ineffective for failing to raise meritless issues.   *See* <u>Freeman</u>, 536 F.3d at 1233; <u>Reutter</u>, 232 F. App'x at 917.   Petitioner Crystal has not shown that the state court's adjudication was contrary to, or an unreasonable application of, federal law as determined by the U.S. Supreme Court or that the state court's adjudication involved an unreasonable determination of the facts.   This ground should be denied.

### Ground 7:   IAC/Appellate Counsel – Fair Market Value

In his seventh ground, Petitioner Crystal asserts his appellate counsel provided ineffective assistance by not raising in the direct appeal "the failure of the prosecution to establish fair market value-cost of the 2011 Porsche Panamera(s) sold June 30, 2011 with 70 miles roughly (90) days prior to the introduction of the 2012 models in September 2011."   ECF No. 1 at 16. Crystal asserts this violated "U.S.C.A. 5th, 6th, and 14th Of the U.S. Constitution."   *Id*.

Respondent states Crystal exhausted his state court remedies on this ground by raising it as the sixth issue in his state habeas petition.   ECF No. 8 at 42.   The First DCA denied the petition without an explanation.   Ex. J. This adjudication on the merits is entitled to AEDPA deference.   *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.

The record reflects the prosecution presented the testimony of Graubman, the sales manager and the one who dealt with Crystal, regarding the value of the vehicle.   Ex. B at 186.   Graubman testified the base price of the vehicle was $102,000, *id*. at 192, and the final purchase amount was $109,588.74, *id*. at 193.   *See* § 812.012(10)(a)1., Fla. Stat. (2010) (providing that "value" means "the market value of the property at time and

place of the offense or, if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the offense"); *see, e.g.*, <u>Pickles v. State</u>, 313 So. 2d 715, 717 (Fla. 1975) ("[W]hile market value at the time of theft is the applicable test, purchase price and 'other circumstances' can be sufficient evidence of market value in the appropriate case."). The "buyer's order" reflecting this information, as well as the vehicle's mileage, taxes, and add-ons, was "printed up at the time of delivery" and admitted into evidence as State's Exhibit 3. Ex. B at 192.

As with Grounds 5 and 6, Appellate counsel cannot be ineffective for failing to raise meritless issues. *See* <u>Freeman</u>, 536 F.3d at 1233; <u>Reutter</u>, 232 F. App'x at 917. Petitioner Crystal has not shown that the state court's adjudication was contrary to, or an unreasonable application of, federal law as determined by the U.S. Supreme Court or that the state court's adjudication involved an unreasonable determination of the facts. This ground should be denied.

### <u>Ground 8</u>:   Trial Court Error – Evidence Favorable to Defendant

In his eighth ground, Petitioner Crystal asserts his conviction was obtained "by the unconstitutional failure of the prosecution to disclose to the Defendant evidence favorable to the Defendant," in violation of <u>Giglio v.</u>

<u>United States</u>, 405 U.S. 150 (1972).   ECF No. 1 at 17.   He asserts this constituted a "violation of U.S.C.A. 5th, 6th, and 14th of the U.S. Constitution due process clause, equal protection under the law."   *Id*.

Respondent states Crystal exhausted this ground in state court by raising it as the fifth issue in his state post-conviction motion and appealing its denial to the First DCA.   ECF No. 8 at 46; *see* Ex. O at 35-40.   The state post-conviction court denied the claim, making the following findings:

> Defendant alleges that the prosecution committed a "Giglio-Brady violation" concerning trial testimony given by Michelle Tommey regarding Regus Management Group, LLC. Defendant cites to portions of the trial transcript (which he attached to his motion) and alleges that during Ms. Tommey's cross examination she gave "false" testimony.   Although Defendant does not specifically recite in his motion the testimony that he alleges was "false," he cites to the trial transcript.   Based on Defendant's trial transcript citations, it appears that his claim is based on Ms. Tommey's testimony that she did not have documentation for Regus centers in Miami, and that she did not find any Regus account for Defendant.   Defendant alleges that "this testimony was used by the [S]tate to infer that Defendant Crystal was fabricating any existence of a business or entity in order to deceive Porsche of Destin and assist to establish criminal intent to convict the Defendant."   To support his claim, Defendant alleges that "Detective Vaughn" testified during the trial that he spoke with "Michelle Tommey who identified herself as the general manager" and "indicated that the had previously had an account for Mr. Crystal" with "an address in Miami."
>
> Defendant also attached to his motion what he alleges is a copy of the lease contract with Regus, which appears to concern

a time period between 2006 and 2009. Defendant further argues that during a bench conference, the prosecutor made statements that show he knew that Defendant had "visited Regus" at "495 Grand Blvd. Miramar, Beach Fl to lease office space." Defendant focuses on the prosecutor's statement that "I believe a year after all this happened, Mr. Crystal did try to get space through them through a totally different name." Defendant alleges that during sentencing, Defendant "provided this Court with facts about when he went to Regus 495 Grand Blvd and agreed to terms with Regus and merely needed to return executed contract with fees. And this was prior to June 30, 2011." Defendant alleges that the prosecutor's "mis-characterization of the facts of when Defendant Crystal visited Regus Miramar Beach and knowingly allowing Ms. Tommey's testimony was designed to influence—change the outcome of Crystal's trial" and that it is "intrinsic fraud-deception as the prosecutor made knowingly false statements."

<u>Giglio Claim</u>

"To establish a <u>Giglio</u> violation, it must be shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." <u>Guzman v. State</u>, 868 So. 2d 498, 505 (Fla. 2003). "Under <u>Giglio</u>, where the prosecutor knowingly uses perjured testimony, or fails to correct what the prosecutor later learns is false testimony, the false evidence is material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* at 506 (quotations omitted). The fact that two witnesses present inconsistent testimony on the same matter is not sufficient to establish a <u>Giglio</u> violation. <u>Hernandez v. State</u>, 180 So. 3d 978, 994 (Fla. 2015).

The primary basis of Defendant's claim is that Detective Vaughn testified that Ms. Tommey informed him that Defendant had a Regus account in Miami, but Ms. Tommey testified that

she did not have documentation for Regus centers in Miami, and that she did not find any Regus account for Defendant. However, these circumstances do not show that Ms. Tommey presented perjured testimony.    Moreover, the fact that Defendant attached what appears to be documentation showing an account with Regus in 2006 through 2009, as well as his reference to the prosecutor's statements to the Court during the bench conference concerning Defendant's attempt to obtain a Regus account, do not establish a sufficient claim that Ms. Tommey actually perjured herself or that the prosecutor made false statements.    Further, Defendant's allegations fail to establish a sufficient claim regarding the second prong of the Giglio rule that the prosecutor knew the testimony was false.

Nevertheless, even if the first two prongs were somehow established, Ms. Tommey's testimony is not material because there is no reasonable likelihood that the false testimony could have affected the judgment of the jury when considering the other evidence produced at trial.    The jury heard testimony that Defendant never had sufficient funds in his bank accounts to pay for the Porsche and that the check Defendant used to obtain the vehicle was denied for insufficient funds.    The jury heard testimony that, after salesperson Bob Graubman learned that there were insufficient funds, he attempted to contact Defendant multiple times over several days, but Defendant did not return his calls or respond to the messages.    The jury heard testimony that Mr. Graubman drove to the location where Defendant claimed to have a business, but there was no business attributable to Defendant at the address Defendant had provided.    Further, the jury heard testimony that when Defendant returned the car about a week after he had driven away with it, he had "put some 2,500 miles on it."    Further, as to Defendant's claims concerning the prosecutor's statements during the bench conference, the claim fails for at least the reason that the statements were not presented to the jury and are not material.    Consequently, Defendant is not entitled to relief.

Ex. N at 326-28 (footnote omitted).

The First DCA per curiam affirmed the state post-conviction court's order without a written opinion.   Ex. R.   The First DCA's summary affirmance is an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).   *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").   A review of the record supports the state courts' determination. *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.   It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the Eleventh Circuit has explained:

> In Giglio v. United States, . . . , the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where "the false testimony could in any reasonable likelihood have affected the judgment of the jury."   405 U.S. at 154.   Giglio error, which "is a species of Brady error," exists "when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew or should have known, of the perjury.'" Ventura v. Att'y Gen., 419 F.3d 1269, 1276-77

(11th Cir. 2005) (quoting United States v. Agurs, 427 U.S. 97 . . . (1976)).

> "To establish a Giglio claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011).

Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1107-08 (11th Cir. 2012). The Eleventh Circuit also explained that "[t]he Giglio materiality standard is 'different and more defense friendly' than the Brady materiality standard" as "for Brady violations, the defendant must show a reasonable probability that the result would have been different, but for Giglio violations, the defendant has the lighter burden of showing that there is any reasonable likelihood that the false testimony could have affected the jury's judgment." Id. at 1108 (quoting United States v. Alzate, 47 F.3d 1103, 1109-10 (11th Cir. 1995)).

In addition, to prevail, a habeas petitioner "must show that a Giglio error resulted in 'actual prejudice' to him under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 . . . (1993)." Id. at 1110. Even if a petitioner shows testimony was false about some things, and even assuming that false testimony can be imputed to the prosecutor and was material under

*Giglio*, the petitioner must still show he suffered actual prejudice under

*Brecht*.    *Id.*    The Eleventh Circuit has explained:

> [T]he *Brecht* Court concluded that the appropriate harmless-error
> standard for habeas review of criminal convictions was whether
> the constitutional error "had substantial and injurious effect or
> influence in determining the jury's verdict." . . . Thus, to grant
> habeas relief based on constitutional trial error, the federal
> habeas court must find not only that the error occurred, but that
> it "resulted in 'actual prejudice'," that is, "the error had
> 'substantial and injurious effect or influence in determining the
> jury's verdict.'" The *Brecht* standard "is more favorable to and
> less onerous on the state, and thus less favorable to the
> defendant, than the *Chapman* [v. California, 386 U.S. 18 (1967),]
> harmless beyond a reasonable doubt standard."
>
> *Giglio* error is trial error, not a structural defect.    Therefore,
> when considering a *Giglio* claim on federal habeas review, we
> can grant relief on that claim only if (1) the petitioner establishes
> that a *Giglio* error occurred, and (2) that error had "substantial
> and injurious effect or influence in determining the jury's verdict."
> *Brecht*, 507 U.S. at 637.

*Id.*  at 1111-12 (citations omitted).    The court further explained that "a *Giglio*

error can be harmless under *Brecht* because the *Giglio* materiality standard

is lower than that of *Brecht*."    *Id.* at 1113.    Finally, "[b]ecause the *Brecht*

harmlessness standard is more strict from a habeas petitioner's perspective

than the *Giglio* materiality standard, federal courts confronted with colorable

*Giglio* claims in § 2254 petitions in many cases may choose to examine the

*Brecht* harmlessness issue first."    *Id.* at 1113-14.

In this case, the state court record supports the post-conviction court's findings that the circumstances do not indicate that Michelle Tommey presented perjured testimony.   As referenced in the analysis of Ground 1, *supra*, during the trial, the prosecutor questioned Tommey, who was employed as a general manager by the Regis Group during 2011.   Ex. B at 149-50.   Tommey testified she "handle[s] all the operations and sales of the center in Grand Boulevard" in Sandestin.   *Id*. at 150.   She testified:

> Q.   Okay.  Did you have a chance to review your documents from that time frame in 2011?
>
> A.   Yes.
>
> Q.   Okay.   Did Jeffrey Crystal, in fact, have a business located in your office during the summer of 2011?
>
> A.   No.
>
> Q.   Okay.   Did he have a virtual office set up in 2011?
>
> A.   No.
>
> Q.   Okay.   Did he have any kind of I-get-this-space-whenever-I-want-to-come but – any kind of agreement at all with you in 2011?
>
> A.   No.   We didn't have anything in our system with an agreement, no.
>
> Q.   Okay.   Had you ever heard of the Crystal Group and Associates Corporation?

A.   No.

Q.   Had you ever spoke to or seen the Defendant at that time?

A.   No.

Ex. B at 151-52.

On cross, defense counsel asked Tommey whether Crystal ever had any contracts with Regis, and the prosecutor objected.   *Id*. at 152.   At the bench conference, the court instructed defense counsel to "[r]edirect the witness to be sure it's at or before this time."   *Id*. at 153.   Defense counsel rephrased the question and the cross-examination continued:

Q.   . . . Prior to June of 2011, Jeff Crystal had a contract – or Crystal Group and Associates had a contract with Regis for an office space in Miami, correct?

A.   I don't have the documentation for the Miami centers.

Q.   Okay.

A.   So that – but when I pull it up in our system, there was nothing that popped up under the Crystal Group.

. . . .

Q.   As far as you know, he did not previously have any office space anywhere in America?

A.   Not from what I could tell in our system that we – that I can see.

Q.   Okay.   Does your system give you that ability?

A.   To pull it up.

Q.   To pull put up past customers?

A.   Oh, yeah.

Q.   Prior to today, did you go back and look to see if there was anything with Mr. Crystal?

A.   Yes.   I did not see anything under the Crystal Group.

Q.   Did you see anything under Jeffery Crystal?

A.   The only thing that I saw under Jeffery Crystal was a BN Trading.   I don't know if that's his or not.   And that was a Utah – out in Utah.   It was a Business World.   It's where – it's one of our products that they can have.   They can't use our address for anything.   They can just use the facilities if they need to have a meeting, but they cannot use our address.

*Id*. at 153-55.   Defense counsel asked Tommey if she remembered talking

to law enforcement in this case and she testified:

Not that I remember.   I mean, it's been three and a half years ago, so I don't remember talking to anybody about this case.   It may – it could have been somebody else in our center.   We do have we two other – we did have two other people working in the center, so I can't say for sure . . . .

*Id*. at 155.   Defense counsel confirmed that there are a total of three people

that work there and indicated "there's a chance somebody else might have

talked to them."   *Id*. at 155-56.   Tommey testified, "They could have, but I

don't – it would have typically been me because I'm the general manager, so – unless it was something that I wasn't made aware."   *Id*. at 156.

The prosecutor also presented the testimony of Stefan Vaughn, who worked as a criminal investigator for the Okaloosa County Sheriff's Office in 2011.   Ex. B at 178.   Vaughn testified he was assigned to the Crystal investigation a few weeks after Deputy Justiss had taken the initial report. *Id*. at 179.   Vaughn reviewed all the notes and spoke with individuals at the Porsche of Destin dealership as well as Crystal.   *Id*.   Based on the information he had, Vaughn applied for a warrant for Crystal's arrest "on or about the 12th day of October or so of 2011."   *Id*. at 180.   He testified the warrant was served "on or about the 13th day of December, 2013."   *Id*. at 181.

On cross, defense counsel asked Vaughn whether, as part of his investigation, he spoke with the manager at Regis Corporation.   *Id*. at 181-82.   Vaughn answered, "I did speak with a young lady that worked for Regis. I believe that she was the manager."   *Id*. at 182.   The inquiry continued:

> Q.   Okay.   Based on your conversation with her, were you under the impression that Mr. Crystal had, had some prior accounts with them?
>
> A.   I was, yes, sir.

Q.   Okay.   Were those – were those prior contacts with Regis in Miami?

A.   The – in referring to my notes here, it looks like I spoke with a Michelle Tommey, who identified herself as general manager, and in that she had indicated that they had previously had an account for Mr. Crystal and then that was an address that was in Miami, yes, sir.

*Id*.

Crystal asserts Tommey presented false or perjured testimony at trial, that she had never heard of Jeffrey Crystal or the Crystal Group, given the testimony of Vaughn that he had spoken to Tommey and she indicated to him Regis previously had an account for Crystal in Miami.   ECF No. 1 at 17. As the state post-conviction court explained, however, that two prosecution witnesses presented conflicting testimony does not constitute a <u>Giglio</u> violation.   *See, e.g.*, <u>Hernandez v. State</u>, 180 So. 3d 978, 994 (Fla. 2015) ("Even though Tammy's testimony and her earlier statements and deposition demonstrate that there were inconsistencies, and some confusion in her rendition of events, such 'mere inconsistencies' have been held insufficient to establish a <u>Giglio</u> violation."); <u>Ferrell v. State</u>, 29 So. 3d 959, 978 (Fla. 2010) ("Ferrell cannot establish a <u>Giglio</u> violation by showing merely that the State put on witnesses whose testimony conflicted with another person's version of events.").   *See also, e.g.*, <u>United States v. Brown</u>, 634 F.2d 819,

827 (5th Cir. 1981) ("[D]ue process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements.").

Further, as the state post-conviction court found, even assuming Tommey's testimony was false, Crystal has not shown the prosecutor knew her testimony was false. Moreover, the record supports the state court's finding that, even if the prosecutor did know the testimony was false, that testimony was not material given the other evidence produced at trial, as set forth in the analysis of Ground 1, *supra*. For instance, the State presented testimony that Crystal never had sufficient funds to pay for the vehicle, Crystal did not return Graubman's calls, and Crystal returned the vehicle a week later, having put more than 2000 miles on it. In addition, Graubman had testified that he had driven to the location where Crystal claimed to have a business but there was no business attributable to Crystal at that address.

Petitioner Crystal has not shown that the state court's adjudication was contrary to, or an unreasonable application of, federal law as determined by

the U.S. Supreme Court or that the state court's adjudication involved an unreasonable determination of the facts.   This ground should be denied.

### <u>Ground 9</u>:   IAC – Phone Records

In his ninth ground, Petitioner Crystal asserts his trial counsel provided ineffective assistance by not filing a "motion to seek court's permission to subpoena phone records that verbally proved agreement between defendant and Porsche of Destin-Robert Graubman."   ECF No. 1 at 18.   He explains, as supporting facts, that his "text messages could show Robert Graubman was on the behalf of the dealership aware when he accepted the check funds were not on deposit to clear the check."   *Id*.   Crystal asserts defense counsel "was informed of these text and content," but "failed to file any motion to the Lower Tribunal or serve a Subpoena to AT&T to produce the data between June 28, 2011 and July 8, 2011."   *Id*.   Crystal asserts this resulted in a violation of his 6th and 14th Amendment rights under the U.S. Constitution.   *Id*.

Respondent states Crystal exhausted this ground in state court by raising it as the seventh issue in his post-conviction motion and appealing its denial.   ECF No. 8 at 51; *see* Ex. O at 42-45.   The state post-conviction court denied the claim, making the following findings:

> Defendant alleges that he is entitled to "acquittal on both counts [g]rand [t]heft and insufficient funds check."   He alleges that his attorney rendered ineffective assistance by failing to petition the Court for a subpoena duces tecum concerning Defendant's "cell phone text-messages from AT&T" and that had counsel done so, "the outcome would have been different . . . ." In his motion, Defendant appears to refer to the jury instructions concerning the crime of worthless check, and he claims that the alleged text messages would "confirm the Defendant's position and statements concerning his agreements made verbally with Porsche of Destin to hold [the] check until funds were transferred."

> Although Defendant alleges he is entitled to an "acquittal" on the grand theft charge *and* worthless check charge, this claim concerns an alleged defense for only the worthless check charge.   Because that charge was dismissed, Defendant is not under a judgment or sentence for that offense, and therefore rule 3.850 does not provide a vehicle for relief.   As to the grand theft charge, Defendant's claim fails to state any sufficient basis for postconviction relief.   Accordingly, Ground 7 is denied.

Ex. N at 330.

On appeal, the First DCA affirmed the post-conviction court's order without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).   Ex. R; *see* Richter, 562 U.S. at 99.   The record supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

As the state post-conviction court explained, the allegations in this ground would support a defense only for the worthless check charge.   *See* § 832.05(2)(a), Fla. Stat. (2010) (providing "this section [proscribing

worthless checks] does not apply to any check when the payee or holder knows or has been expressly notified prior to the drawing or uttering of the check, or has reason to believe, that the drawer did not have on deposit or to the drawer's credit with the drawee sufficient funds to ensure payment"). The trial court vacated Crystal's conviction on that charge.

As to the grand theft charge, as the state court found, Crystal did not meet his burden to show IAC.   In particular, as to prejudice, even assuming counsel performed deficiently in not obtaining the phone records, there is no reasonably probability the outcome of the trial would have been different given the other evidence presented by the State, including the deception regarding an office for the Crystal Group in Sandestin, the lack of funds in Crystal's bank accounts, the length of time Crystal kept the vehicle, and the mileage put on the vehicle, as explained previously.

Petitioner Crystal has not shown that the state court's adjudication was contrary to, or an unreasonable application of, federal law as determined by the U.S. Supreme Court or that the state court's adjudication involved an unreasonable determination of the facts.   This ground should be denied.

### Ground 10:   IAC – Fidelity Investments Evidence

In his tenth ground, Petitioner Crystal asserts his trial counsel provided

ineffective assistance by "failing to object to Fidelity Investments evidence chain of custody," explaining the "evidence was altered and admitted into evidence as true and correct to the finder of facts-jury."   ECF No. 1 at 19. Crystal asserts this violated his rights under "6th and 14th [Amendments] of the U.S. Constitution."   *Id*.

Respondent states Crystal exhausted this ground in state court by raising it as the ninth issue in his post-conviction motion and appealing its denial.   ECF No. 8 at 54; *see* Ex. O at 50-55.   The state post-conviction court denied the claim, making the following findings:

> Defendant states that "[o]n June 30, 2011 Defendant Crystal and the Crystal Group entered into a contract to purchase a 2011 Porsche Panamera(s) from Porsche Destin."   He states that he gave "Porsche of Destin check number 1081 in the amount of $109,588.74."   Defendant alleges that his attorney rendered ineffective assistance of counsel by failing to object to the chain of custody concerning the check admitted into evidence at trial as State's Exhibit 4.   In support of his claim, Defendant attached what appears to be two copies of check 1081 to his "Motion for Leave to Add New Claim for Relief 'Ground (9) Nine' for Consideration to Defendant's Fourth Amended 3.850 Motion for Relief Ordered by the Court on 2/14/18."
>
> Defendant fails to specifically allege how the check introduced at trial was "altered," and for at least this reason, the claim appears insufficient.   Moreover, the Court notes that Defendant admits under oath in his present motion that he delivered check number 1081 to Porsche of Destin in the amount of $109,588.74.   Even assuming that counsel somehow performed deficiently as alleged by Defendant, but for that

deficient performance there is no reasonable probability that the outcome of the trial would have been different.   Even if counsel would have been able to somehow prevent the State from entering the physical check into evidence, the jury would still have been presented with the testimony of Mr. Graubman concerning the transaction and the financial documentation showing that Defendant did not have funds to pay for the vehicle. The jury still would have heard that Defendant did not return Mr. Graubman's calls, and that there was no "Crystal Group" business at the location at which Defendant claimed to have a business.   The jury still would have heard that Defendant kept the car for a week while putting over 2000 miles on it. Consequently, Ground 9 is denied.

Ex. N at 332-33.

On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).   Ex. R; *see* Richter, 562 U.S. at 99.   The record supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

The copy of the check, State's Exhibit 4, appears in the record.   *See* Ex. A at 57-58.   As Respondent indicates, in his habeas petition, Crystal asserts the copy differs from the original check because the original check contained a "refer to maker" stamp and internal banking codes that were removed.   ECF No. 1 at 19; ECF No. 8 at 55.   During the trial, defense counsel stipulated to the admission of Exhibit 4.   Ex. B at 176.

As the state court found, there was no dispute that Crystal tendered a

check to Porsche of Destin for the custodian for $109,588.74.    Even if

defense counsel's stipulation to the admission of the copy of the check

somehow constituted deficient performance, Crystal has not shown any

prejudice.    Among other things, as the state court explained, the State

presented the testimony of Graubman concerning the transaction, Ex. B at

184-270, and the testimony and financial documentation showing that

Crystal did not have funds to pay for the vehicle, *id*. at 159-67.

Petitioner Crystal has not shown that the state court's adjudication was

contrary to, or an unreasonable application of, federal law as determined by

the U.S. Supreme Court or that the state court's adjudication involved an

unreasonable determination of the facts.    This ground should be denied.

### Ground 11:   IAC – Special Interrogatory Verdict Jury Instructions

In his eleventh ground, Petitioner Crystal asserts his trial counsel

provided ineffective assistance by "fail[ing] to consult petitioner and request

a Special Interrogatory verdict jury instructions with the Defendant and

instead only consulted the Defendant on lesser included offenses jury

instructions."   ECF No. 1 at 20.   Crystal asserts this violated his rights

under the 5th, 6th, and 14th Amendments to the U.S. Constitution, as "he

has been deprived of his counsel, due process, equal protection of the laws,

the right to an impartial jury, nor be put in jeopardy of the same offense twice." *Id*.

Respondent states Crystal exhausted this ground in state court by raising it as the tenth issue in his post-conviction motion and appealing its denial.   ECF No. 8 at 58; Ex. O at 55-58.   The state post-conviction court denied the claim, making the following findings:

> Defendant alleges that his attorney rendered ineffective assistance by failing to request an interrogatory verdict form so that he "could only be convicted of one or the other" offenses "but not both."   Defendant alleges that counsel "was [an] advocate for the State by risking and allowing the Defendant to be convicted of both grand theft and worthless check in the alleged same criminal episode."

> The Court finds that Defendant fails to present a facially sufficient claim for postconviction relief.   Even if counsel performed deficiently by not requesting an interrogatory verdict form, Defendant is not entitled to relief because he does not allege any specific facts indicating a reasonable probability that the jury would have found him not guilty of grand theft.   Indeed, Defendant's claim appears speculative, and speculation does not provide a basis for postconviction relief.   *See* Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000) ("Postconviction relief cannot be based on speculation or possibility.").   The jury in this case found Defendant guilty of both charges, and if the jury had received a verdict form only permitting a guilty verdict for one of the charges, it is pure conjecture as to what the jury would have done in those circumstances.   Accordingly, Ground 10 is denied.

Ex. N at 333-34.

On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).   Ex. R; *see* Richter, 562 U.S. at 99.    The record supports the state courts' determination.    *See* Wilson, 138 S. Ct. at 1192.

As the state court found, Crystal's claim in this ground is speculative and cannot provide a basis for relief.    *See, e.g.*, Knight v. State, 211 So. 3d 1, 14 (Fla. 2016) (explaining that "speculative, conclusory allegations are insufficient to warrant postconviction relief"); Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1270 (11th Cir. 2012) ("The presumption runs against the defendant, the burden is on him, and speculation about the merits of counsel's trial strategy is not enough to carry that burden.").   The trial judge had instructed the jury, in pertinent part:

> If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt.   If you find no offense has been proven beyond a reasonable doubt, then, of course, your verdict must be not guilty.
>
> A separate crime is charged in each count of the information.   And although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each.   A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crime charged.

Ex. B at 331.   The jury found him guilty of both the grand theft and worthless

check charges, and nothing indicates the jury acted contrary to the instructions.   *See id*. at 339-40.

Petitioner Crystal has not shown that the state court's adjudication was contrary to, or an unreasonable application of, federal law as determined by the U.S. Supreme Court or that the state court's adjudication involved an unreasonable determination of the facts.   This ground should be denied.

> **Ground 12**:   **Trial Court Error – Subject Matter Jurisdiction/ Information**
>     **&**
>
> **Ground 13**:   **Trial Court Error – Subject Matter Jurisdiction/ Civil Matter**

In his twelfth and thirteenth grounds, Petitioner Crystal asserts the Okaloosa County Criminal Court did not have subject matter jurisdiction. ECF No. 1 at 21-22.   In particular, in the twelfth ground, he asserts "[t]he Okaloosa County criminal court lacked subject matter jurisdiction and persona[l] jurisdiction to impose sentence after the Okaloosa State Attorney's Office failed to timely file information."   ECF No. 1 at 21.   He asserts this violated his rights under the "4th, 5th, 6th, and 14th Amendment[s] of the U.S. Constitution."   *Id*.

In his thirteenth ground, Petitioner Crystal asserts the "Okaloosa County Criminal Court lacked Subject Matter Jurisdiction to enter a judgment

and impose sentence," as this was a "[d]ispute between the Crystal-Group-Jeff Crystal and Porsche of Destin [and] a civil matter."   ECF No. 1 at 22. He asserts this resulted in a violation of his rights under the "4th, 5th, 6th, and 14th Amendment[s] of the U.S. Constitution."   *Id*.   He further asserts that "Freedom of Contract is a constitutional right and shall not be interfered with unless the subject matter is illegal" and "[c]ontracts with arbitration agreements are governed and enforceable under the federal arbitration act ("FAA")."   *Id*.   He further asserts, "Fundamental Miscarriage of Justice – actual innocence."   *Id*.

Respondent states Crystal exhausted both of these grounds by raising the arguments in the fourth claim in his post-conviction motion and appealing its denial.   ECF No. 8 at 62, 67; Ex. O at 23-25, 32-35.   The state post-conviction court made the following findings in denying the claim:

> Defendant alleges that the Court lacked subject matter jurisdiction because the dispute between "Jeff Crystal and Porsche of Destin is a civil matter."   Defendant alleges that "Robert Graubman filed a criminal complaint with the Okaloosa County Sheriff's [O]ffice prior to any attempt to settle the matter pursuant [to] the contract arbitration limitation acknowledgment after I returned the vehicle."   Defendant claims that his attorney rendered ineffective assistance of counsel for failing to "look further" and had he done so he "would have discovered details that pointed to a civil matter."   Defendant alleges that his attorney rendered ineffective assistance of counsel by failing to file a motion to dismiss on the basis that the case is a "civil

matter."

Article V, Section 20(c)(3), of the Florida Constitution states that circuit courts have jurisdiction "of all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged[.]"   "[J]urisdiction in criminal cases is determined by the charge made in the indictment or information." State v. Vazquez, 450 So. 2d 203, 204 (Fla. 1984).

The information in this case charged Defendant with felonies, and accordingly, this Court's jurisdiction was properly invoked.   Defendant's assertion that an arbitration clause in the sales contract would somehow cause the Court to lack jurisdiction over this case is not well taken.   Consequently, the Court finds that counsel did not perform deficiently as alleged by Defendant.   Therefore, Ground 4 is denied.

Ex. N at 325 (footnote omitted).

On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).   Ex. R; *see* Richter, 562 U.S. at 99.   The record supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

Although the ground in the state court also included a claim of IAC, the underlying issue was the same as Crystal presents here – an allegation that the state court lacked subject matter jurisdiction.   As the state post-conviction court found, the information filed in this case charged Crystal Defendant with felonies.   *See* Ex. A at 13.   As explained in the analysis of Ground 5, *supra*, the State timely filed the information.   As the state court

also explained, any arbitration clause in the sales contract with Porsche of Destin would not affect the state court's jurisdiction over a criminal matter. Thus, the state court's jurisdiction was properly invoked.   *See* Art. V, § 20(c)(3), Fla. Const. (providing that circuit courts have jurisdiction "of all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged"); *see also, e.g.*, State v. Vazquez, 450 So. 2d 203, 204 (Fla. 1984) ("[J]urisdiction in criminal cases is determined by the charge made in the indictment or information.").

Petitioner Crystal has not shown that the state courts' adjudication of the claims in these grounds involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   These grounds should be denied.

## Conclusion

Petitioner Jeffery Todd Crystal is not entitled to federal habeas relief. The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 3, 2021.

> **S/ Martin A. Fitzpatrick**
> **MARTIN A. FITZPATRICK**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   See 11th Cir. R. 3-1; 28 U.S.C. § 636.**